DAVID SEROR – Bar No. 067488
JESSICA S. WELLINGTON – Bar No. 324477
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:      dseror@bg.law
            jwellington@bg.law

Attorneys for David Seror, Judgment Creditor

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### MODESTO DIVISION

| | |
|---|---|
| In re | Case No. 23-90029 |
| RAMIL ABALKHAD and MELINA ABALKHAD, | Chapter 11 |
| Debtors. | Adv. Case No. |
| | **COMPLAINT TO DETERMINE NON DISCHARGEABILITY OF DEBT AND OBJECTING TO ENTRY OF DISCHARGE PURSUANT TO 11 U.S.C. §§ 523(a)(4); 523(a)(2)(A), 523(a)(6); 11 U.S.C. §§ 727(a)(3); 727(a)(7) AND 727(a)(6)** |
| DAVID SEROR, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | |
| RAMIL ABALKHAD and MELINA ABALKHAD, | |
| Defendants. | |

David Seror, the duly appointed and acting Chapter 7 Trustee for the Estate of R.J. Financial, Inc., dba Romano's Jewelers, creditor, and Plaintiff (the "Trustee" or "Plaintiff"), hereby complains and alleges as follows:

1

## I.    STATEMENT OF JURISDICTION, VENUE AND PROCEEDINGS

1.    On January 27, 2023, Debtors Ramil Abalkhad and Melina Abalkhad ("Debtors" or "Defendants") filed a voluntary petition (the "Petition") for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California, Modesto Division, commencing the above captioned bankruptcy case.

2.    As of the date of this Complaint, Debtors have not been granted a discharge.

3.    This Complaint is timely because the date by which a Complaint to determine dischargeability of debt or to object to discharge is May 1, 2023.

4.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a) as this is a core proceeding under 28 U.S.C. § 157(a)(1) and (b)(2)(I).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) in that the instant proceeding is related to a case under Title 11 of the United States Code, which is still pending.

5.    This action is commenced pursuant to Bankruptcy Code §§ 523(a)(4); 523(a)(2)(A); 523(a)(6), and §§ 727(a)(3); (a)(7) and (a)(6).

6.    Plaintiff consents to final judgment entered by this Court.

## II.    PARTIES

7.    David Seror, Plaintiff herein, is the duly appointed and acting Chapter 7 Trustee for the Estate of R.J. Financial, Inc., dba Romano's Jewelers, Debtor ("R.J."), now pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, Case No. 1:10-bk-10209 MT (the "R.J. Bankruptcy").  David Seror as Chapter 7 Trustee was the Plaintiff in an Adversary Proceeding commenced in the R.J. Bankruptcy captioned *David Seror, Chapter 7 Trustee Plaintiff vs. Randy Abalkhad, aka Ramil Abalkhad an Individual and Melina Abalkhad an Individual, et. al, Defendants*., Case No. 1:18-ap-01029 MT (the "R.J. Adversary Proceeding").  The Trustee brings this action solely in his capacity as the Chapter 7 Trustee for the R.J. Bankruptcy and as Judgment Creditor pursuant to Judgment entered in the R.J. Adversary Proceeding on October 12, 2021 [Doc. No. 140], in favor of the Trustee and against Randy Abalkhad aka Ramil Abalkhad and Melina Abalkhad in the amount of $250,000 (the "Abalkhad Judgment").

2891064_2

8.　　Defendant herein Ramil Abalkhad ("Ramil" or "Randy") is the Debtor in this Bankruptcy Case. The Trustee is informed and believes and based thereupon alleges that Randy is an individual residing within the jurisdiction of this Court.

9.　　Defendant herein Melina Abalkhad ("Melina") is the Debtor in this Bankruptcy Case. The Trustee is informed and believes and based thereupon alleges that Melina is an individual residing within the jurisdiction of this Court.

10.　　Plaintiff is informed and believes and thereupon alleges that at all relevant times herein, Randy and Melina were and are married to each other.

11.　　At all times described herein, Randy and Melina were the agent, servant, employee and co-conspirator of each other and at all said times and in doing all things alleged herein were acting in agreement and in concert with one another.

12.　　At all relevant times, Randy and Melina were insiders of R.J. pursuant to Bankruptcy Code § 101.

### III.　　FACTUAL ALLEGATIONS RELATING TO R.J.

13.　　The R.J. Bankruptcy Case was commenced when R.J. Financial, Inc. dba Romano's Jewelers filed a voluntary Chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 et *seq,* on January 7, 2010.

14.　　Prior to the commencement and/or conversion of R.J.'s Chapter 11 case, it owned and operated retail jewelry stores throughout Southern California under the name "Romano's Jewelers, Inc. ("Romano's").

15.　　Romano's was a retail establishment which sold fine jewelry including, but not limited to, engagement rings, bridal sets, birth stone rings, earrings and bracelets, and "alternative" metals to the general public.

16.　　At the time of the bankruptcy petition, R.J. owned and operated a number of jewelry stores located in several shopping malls in Southern California.

17.　　According to the records of the California Secretary of State, R.J. Financial, Inc. was incorporated as a California corporation on July 8, 1994.

2891064_2

18.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy was the Chief Executive Officer, Secretary, Chief Financial Officer, and Sole Director of R.J.

19.     In a Statement of Information filed in 2006 with the California Secretary of State, Randy was identified as the Chief Executive Officer, Secretary, Chief Financial Officer, and Sole Director of R.J.

20.     In a Statement of Information filed in 2013 with the California Secretary of State, Randy was identified as the Chief Executive Officer, Secretary, Chief Financial Officer, and Sole Director of R.J.

### IV.  RANDY AND MELINA AND THEIR ENTITIES

21.     Plaintiff is informed and believes and thereupon alleges that at all times herein relevant, A. David Youssefyeh ("Youssefyeh") was an attorney licensed to practice law in the State of California and represented and performed legal services for the benefit of Randy and Melina and the entities described herein.

22.     Plaintiff is informed and believes and thereupon alleges that Diamond Trading Company of Glendale Galaria-Romano's Jewelers, LLC was formed as a limited liability company on October 7, 2014 ("DTC Glendale").  DTC Glendale was a Defendant in the R.J. Adversary Proceeding.

23.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Melina was the Chief Executive Officer and sole member of DTC Glendale.

24.     In a Statement of Information filed in 2015 with the California Secretary of State, Melina is identified as the Chief Executive Officer and Youssefyeh is identified as the registered agent for DTC Glendale with an address at 1925 Century Park East, Suite 1380, Los Angeles, California 90067.  The Statement of Information also describes the business of DTC Glendale as Jewelry Retail and its business address as 510 W. 6th Street, Suite 950, Los Angeles, California 90014.

25.     According to the records of the California Secretary of State, on October 24, 2017, DTC Glendale submitted a certificate of cancellation.

4

2891064_2

26.     According to the records of the California Secretary of State, Diamond Trading Company of Main Place -Romano's Jewelers, LLC was formed as a limited liability company on October 29, 2014 ("DTC Main Place").  DTC Main Place was a Defendant in the R.J. Adversary Proceeding.

27.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Melina was the Chief Executive Officer and sole member of DTC Main Place.

28.     In a Statement of Information filed in 2015 with the California Secretary of State, Melina is identified as the Chief Executive Officer and Youssefyeh is identified as the registered agent for DTC Main Place with an address at 1925 Century Park East, Suite 1380, Los Angeles, California 90067.  The Statement of Information also describes the business of DTC Main Place as Jewelry Retail and its business address as 510 W. 6th Street, Suite 950, Los Angeles, California 90014.

29.     According to the records of the California Secretary of State, on October 24, 2017, DTC Main Place submitted a certificate of cancellation.

30.     According to the records of the California Secretary of State, Diamond Trading Company of Plaza Bonita - Romano's Jewelers, LLC was formed as a limited liability company on October 7, 2014 ("DTC Plaza Bonita").  DTC Plaza Bonita was a Defendant in the R.J. Adversary Proceeding.

31.     Plaintiff is informed and believes and thereupon alleges that at all times herein relevant, Melina was the Chief Executive Officer and sole member of DTC Plaza Bonita.

32.     In a 2015 Statement of Information filed with the California Secretary of State, Melina is identified as the Chief Executive of DTC Plaza Bonita and Youssefyeh is identified as the registered agent for DTC Plaza Bonita with an address at 1925 Century Park East, Suite 1380, Los Angeles, California 90067.  The Statement of Information also describes the business of DTC Plaza Bonita as Jewelry Retail and its business address as 510 W. 6th Street, Suite 950, Los Angeles, California 90014.

33.     According to the records of the California Secretary of State, on October 19, 2017, DTC Plaza Bonita submitted a certificate of cancellation.

2891064_2

34.     According to the records of the California Secretary of State, Diamond Trading Company of Temecula Mall-Romano's Jewelers, LLC was formed as a limited liability company on October 7, 2014 ("DTC Temecula"). DTC Temecula was a Defendant in the R.J. Adversary Proceeding.

35.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy and/or Melina was the Chief Executive Officer and member of DTC Temecula.

36.     According to the records of the California Secretary of State, Youssefyeh at 510 W. 6th Street, Suite 950, Los Angeles, California 90014, is identified as the registered agent for DTC Temecula.  DTC Temecula never filed a Statement of Information with the California Secretary of State.

37.     According to the records of the California Secretary of State, DTC Temecula was suspended by the California Secretary of State on February 8, 2018.

38.     According to the records of the California Secretary of State, Diamond Trading Company of Cerritos Romano's Jewelers, LLC was formed as a limited liability company on May 26, 2015 ("DTC Cerritos").  DTC Cerritos was a Defendant in the R.J Adversary Proceeding.

39.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy and/or Melina was the Chief Executive Officer and member of DTC Cerritos.

40.     According to the records of the California Secretary of State, Youssefyeh at 1925 Century Park East, #1380, Los Angeles, California 90067 is identified as the registered agent for DTC Cerritos.  DTC Cerritos never filed a Statement of Information with the California Secretary of State.

41.     According to the records of the California Secretary of State, DTC Cerritos was suspended by the California Secretary of State on April 11, 2018.

42.     According to the records of the California Secretary of State, Diamond Trading Company of Downey - Romano's Jewelers, LLC was formed as a limited liability company on May 26, 2015 ("DTC Downey").  DTC Downey was a Defendant in the R.J. Adversary Proceeding.

43.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy and/or Melina was the Chief Executive Officer and member of DTC Downey.

2891064_2

44.     According to the records of the California Secretary of State, Youssefyeh at 1925 Century Park East, #1380, Los Angeles, California 90067 is identified as the registered agent for DTC Downey.  DTC Downey never filed a Statement of Information with the California Secretary of State.

45.     According to the records of the California Secretary of State, DTC Downey was suspended by the California Secretary of State on April 11, 2018

46.     According to the records of the California Secretary of State, defendant Diamond Trading Company - Lakewood was formed as a limited liability company on June 26, 2014 ("DTC Lakewood" and collectively with DTC Glendale, DTC Main Place, DTC Plaza Bonita, DTC Temecula, DTC Cerritos and DTC Downey, the "DTC Entities").  DTC Lakewood was a Defendant in the R.J. Adversary Proceeding.

47.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy was the Chief Executive Officer and sole member of DTC Lakewood.

48.     According to the records of the California Secretary of State, Randy is identified as the Chief Executive Officer of DTC Lakewood, and Youssefyeh at 1925 Century Park East, #1380, Los Angeles, California 90067 is identified as the registered agent for DTC Lakewood.  The Statement of Information also describes the business of DTC Lakewood as Jewelry Retail and its business address as 510 W. 6th Street, Suite 950, Los Angeles, California 90014.

49.     According to the records of the California Secretary of State, on October 19, 2017, DTC Lakewood submitted a certificate of cancellation.

50.     According to the records of the California Secretary of State, Romano Jewelers Services, Inc. aka Romano's Jewelers Services, Inc. was formed as a California corporation on June 30, 2011 ("Romano's Jewelers Services").  Romano's Jewelers Services was a Defendant in the R.J. Adversary Proceeding.

51.     Plaintiff is informed and believes and based thereupon alleges that at all times herein relevant, Randy was the Chief Executive Officer and sole shareholder of Romano's Jewelers Services.

2891064_2

52.     According to a Statement of Information filed with the California Secretary of State on June 8, 2011, for Romano's Jewelers Services, Randy is identified as the Chief Executive Officer, Secretary, Chief Financial Officer, and sole director of Romano's Jewelers Services, and Youssefyeh at 1875 Century Park East, #1460, Los Angeles, California 90067 is identified as the registered agent.  The Statement of Information states the business address for Romano's Jewelers Services is 510 West 6th Street, Los Angeles, California 90014.

53.     According to a Statement of Information for Romano's Jewelers Services filed with the California Secretary of State on February 12, 2014, Melina is identified as the Chief Executive Officer and Chief Financial Officer.  Randy is identified as the Secretary.  Melina is identified as the sole director.  Michael Sabzeva at 16633 Ventura Boulevard, Encino, California 91436 is identified as the registered agent.  The Statement of Information describes the business as Jewelry Retail and states the business address for Romano's Jewelers Services is 510 West 6th Street, Los Angeles, California 90014.

54.     According to the records of the California Secretary of State, RJ Brandon, Inc. was formed as a California corporation on April 29, 2005.  The initial agent for service of process was Farzad Michael Sabzevar, 16633 Ventura Boulevard, Suite 555, Encino, California 91436.

55.     On January 8, 2010, RJ Brandon filed a Certificate of Amendment of Articles of Incorporation.  The Certificate of Amendment is signed by Randy President and Secretary and further provides that the corporate name is changed to Branden & Company ("Branden").

56.     Branden was a Defendant in the RJ Adversary Proceeding.

57.     On November 29, 2012, Branden filed a Statement of Information with the California of State, Randy is identified as the Chief Executive Officer, Secretary and Chief Financial Officer and sole director, and Michael Sabzevar at 16633 Ventura Blvd., #555, Encino, California 91426 is identified as the registered agent for Branden.  Further, the Statement of Information describes the business as Jewelry Wholesale and states the business address is 510 W. 6th Street, Los Angeles, California 90014.

58.     According to the records of the California Secretary of State, MBNB Financial Inc. ("MBNB"), was formed as a California Corporation on December 8, 2008.  The initial agent for

service of process was F. Michael Sabvezar, 16633 Ventura Boulevard, Suite 555, Encino, California 91436.

59.     MBNB was a Defendant in the RJ Adversary Proceeding.

60.     According to a Statement of Information filed with the California Secretary of State on January 30, 2014, Melina is identified as the President and Chief Financial Officer and Randy is identified as Secretary and sole director.  The business address of MBNB is listed as 510 W. 6th Street, Suite 950, Los Angeles, California 90014.  The business is described as financing. Michael Sabzevar at 16633 Ventura Blvd., Encino, California 91426 is identified as the registered agent for MBNB.

61.     According to the records of the California Secretary of State, on October 19, 2017, MBNB submitted a Certificate of Dissolution.

### V.  THE R.J. CHAPTER 11 BANKRUPTCY  CASE

62.     The R.J. Bankruptcy Case was commenced when R.J. Financial, Inc. dba Romano's Jewelers filed a voluntary Chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 et *seq,* on January 7, 2010.

63.     On January 15, 2010, R.J. filed an emergency motion for order seeking authority to enter into a post-petition master dealer agreement for purchase of merchandise contracts with Home Acceptance Corporation ("HAC") and MBNB for factoring (the "MBNB Factoring Motion").  The MBNB Factoring Motion is supported by a Declaration of Randy filed concurrently therewith.  In that Declaration Randy discloses that he is shareholder of MBNB but does not disclose that Melina and he are officers and directors of MBNB.

64.     On January 15, 2010, RJ filed a second emergency motion for order authorizing Debtor to continue to make inventory purchases from Branden (the "Branden Motion").  The Branden Motion is supported by a Declaration of Randy filed concurrently therewith in which he discloses that Branden is owned by Melina.  The Declaration does not state that Randy is an officer or director of Branden.

65.     On January 29, 2010, an order was entered by the Court approving, on an interim basis, the MBNB Factoring Motion (the "February 2010 Order").

2891064_2

66.     On March 23, 2010, a final order was entered by the Court approving the MBNB Factoring Motion (the "MBNB March 2010 Order")

67.     As set forth in the MBNB March 2010 Order, the Debtor was "authorized retroactive to January 26, 2010, and continuing through and including September 29, 2010, to use, sell and/or transfer account receivables to MBNB, so long as the aggregate sales to HAC and MBNB do not exceed $150,000 per month on a cumulative basis." *See* lines 10-13, page 3 of the MBNB March 2010 Order.

68.     On March 23, 2010, an order was entered by the Court approving the Branden Motion (the "Branden March 2010 Order")

69.     As set forth in the Branden March 2010 Order, the Debtor was permitted retroactive to February 22, 2010, and continuing through and including September 29, 2010, to purchase inventory from Branden as the Debtor deems necessary. *See* lines 21-23, page 2 of the Branden March 2010 Order.

70.     The Plaintiff is informed and believes and based thereupon alleges that after the commencement of the R.J. Bankruptcy Case, Randy and Melina, made transfers of R.J.'s inventory, money, goods, customers, assets and business opportunities to themselves, to the DTC Entities, Branden, Romano's Jewelers Services and MBNB (collectively, the "Post-Petition Transfers").

71.     These transfers were made during the time period wherein Randy and Melina were in control and adversely dominated R.J.'s operations and management.

72.     These transfers between R.J. and MBNB related to post-petition purchasing of jewelry by R.J. from Branden, distributions made directly or indirectly by R.J. to Randy and/or Melina, and transfers of R.J.'s assets including jewelry made to the DTC Entities.

73.     These transfers occurred after the commencement of the R.J. Bankruptcy Case and were not authorized by Section 303(f) or Section 542(c) of the Bankruptcy Code or by an order from the bankruptcy court presiding over the R.J. Bankruptcy Case.

74.     The MBNB March 2010 Order authorized the proposed factoring with MBNB through and including September 29, 2010. That agreement had certain limitations and it was never extended.

2891064_2

75.     On November 30, 2011, R.J. submitted its disclosure statement (the "Disclosure Statement") and chapter 11 plan of reorganization (the "Plan").

76.     On May 16, 2012, an order was entered by the bankruptcy court approving the Disclosure Statement.

77.     On April 11, 2013, an order was entered by the bankruptcy court confirming the Plan.

78.     As set forth in the Disclosure Statement and Plan, several assets were transferred to entities controlled by Randy. In consideration for these transfers, Randy was required to pay to R.J.'s bankruptcy estate two-hundred-thousand dollars ($200,000) as "new value" in connection with the confirmation of the Plan.

## VI.   THE R.J. CASE IS CONVERTED TO A CHAPTER 7 BANKRUPTCY CASE

79.     On July 22, 2014, the Internal Revenue Service (the "IRS") filed a Motion to Dismiss or Convert the R.J. Bankruptcy Case on the grounds that R.J. was delinquent in its plan payments to the IRS and in addition was delinquent in its post-confirmation tax obligations.

80.     On May 21, 2015, the California Board of Equalization (the "BOE") filed a Motion to Dismiss or Convert the R.J. Bankruptcy Case, on the grounds that R.J. was not engaged in retail sales and that operations from prior R.J. locations were operated by Romano's Jewelers Services and DTC Lakewood, DTC Main Place and DTC Plaza Bonita.  Additionally, the BOE asserted that R.J. was delinquent in its post-confirmation tax obligations.

81.     On July 14, 2015, the R.J. Bankruptcy Case was converted to a Chapter 7 case and David Seror, the plaintiff herein, was appointed Chapter 7 Trustee in which capacity he continues to serve.

## VII.  THE R.J. ADVERSARY PROCEEDING AND JUDGMENT

82.     On March 14, 2018, David Seror, as Chapter 7 Trustee of the R.J. Chapter 7 case, commenced an adversary proceeding against Randy, Melina, the DTC Entities, Branden and MBNB, among others, as defendants, Case No. 1:18-ap-01029 MT (the "R.J. Adversary").  On June 28, 2018, the Trustee filed his First Amended Complaint.

83.     In connection with the R.J. Adversary, on December 18, 2020, the bankruptcy court entered an order compelling the depositions of Randy and Melina.

2891064_2

84.     On July 22, 2021, the bankruptcy court approved a compromise between the Trustee and Randy and Melina, whereby they would pay $250,000 to the R.J. bankruptcy estate and if not timely paid, a judgment would be entered against Randy and Melina in favor of Plaintiff as Chapter 7 Trustee in the amount of $250,000.

85.     Based upon an application alleging that Randy and Melina failed to timely make the settlement payment, on October 12, 2021, the Court entered judgment in favor of the Trustee and against Randy and Melina in the amount of $250,000 (the "Randy and Melina Judgment").

86.     To date the Randy and Melina Judgment remains owing and unpaid.

87.     On June 6, 2022, the bankruptcy court ordered Randy to appear for examination of judgment debtor on July 27, 2022, (the "Randy Examination" and the "Randy Examination Order").

88.     On June 6, 2022, the bankruptcy court ordered Melina to appear for examination of judgment debtor on July 27, 2022, (the "Melina Examination" and the "Melina Examination Order").

89.     On July 28, 2022, the bankruptcy court entered an order continuing the Randy Examination to September 22, 2022, and further ordered Randy to produce documents.

90.     On July 28, 2022, the bankruptcy court entered an order continuing the Melina Examination to September 22, 2022, and further ordered Melina to produce documents.

91.     Randy failed to comply with the Randy Examination Order

92.     Melina failed to comply with the Melina Examination Order.

93.     On November 7, 2022, the bankruptcy court issued its Order to Show Cause why Randy and Melina should not be found in contempt for failing to appear at the Randy Examination and Melina Examination and failure to produce documents.  The bankruptcy court continued the Randy Examination and Melina Examination and ordered the production of additional documents.

94.     On January 11, 2023, the bankruptcy court issued its Order to Show Cause finding Randy and Melina to both be in contempt for willfully violating the bankruptcy court's orders for the Randy Examination and the Melina Examination and for failing to produce documents as ordered. The bankruptcy court further imposed monetary sanctions against Randy and Melina in the amount of $8,952.  The sanctions remain unpaid.

2891064_2

### FIRST CLAIM FOR RELIEF

### (FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY

### CAPACITY, EMBEZZLEMENT OR LARCENY)
**[11 U.S.C. § 523(a)(4)]**

95.      Plaintiff hereby refers to Paragraphs 1 through 94 of this Complaint and by this reference incorporates said Paragraphs herein as though fully set forth.

96.      Bankruptcy Code § 523(a)(4) provides that a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

97.      All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for fraud, or defalcation while acting in a fiduciary capacity, embezzlement, or larceny money within the meaning of Bankruptcy Code § 523(a)(4).

98.      At all times mentioned herein Randy was an officer and director of R.J. while R.J. was the Debtor in Possession in the R.J. Bankruptcy Case and owed a fiduciary duty to R.J.

99.      Randyand Melina were the members, managers, officers, directors and/or shareholders of the various corporations and limited liability companies identified in this complaint.

100.     Randy and Melina formed and operated the corporations and companies described in this Complaint to advance their own personal interests and profits to the detriment of R.J.

101.     Randy and Melina comingled and transferred assets from and to the companies and corporations described in this Complaint and each are the alter ego of the other. There was no distinction or separation as to the operation and decision making of the various corporations and limited liability companies. Randy and Melina treated each entity as a subsidiary of each other entity and transferred assets from one entity to another without thought or consideration of corporate formalities and value or cost of assets transferred and received.

102.     The DTC Entities, Melina, Randy, Branden, Romano's Jewelers Services and MBNB had entangled business dealings with R.J. The DTC Entities, Branden, Romano's Jewelers Services and MBNB were and/or are managed by the same group of people and share the same (or very similar) employees, including Randy and Melina. Randy and Melina treated each entity as an alter ego of themselves and every other entity.

2891064_2

103.     According to R.J.'s Plan it "owned and operates" the "Lakewood", and "Glendale" stores, yet DTC Lakewood and DTC Glendale were later formed to operate these very same stores.  Randy and, in some cases, Melina were/are members of these limited liability companies.

104.     The DTC Entities were and/or are all insured by the same worker's compensation company, and Plaintiff is informed and believes and thereupon alleges that it is believed that R.J. solely paid for the insurance for all or some of the DTC Entities to the benefit of Randy and Melina and the other entities.

105.     The DTC Entities shared advertising costs, business address, filing cabinets, promotions, and office staff among the various stores all to the benefit of Randy and Melina.

106.     Many of the employees moved between stores (R.J. and non-R.J. stores).

107.     The records of the California Employment Development Department ("EDD") show that effective January 1, 2015: (i)  R.J. no longer was making retail sales, and (ii) R.J. did not have employees.  Plaintiff is informed and believes and thereupon alleges that two entities (Romano's Jewelers Services and DTC Lakewood), owned by Randy and Melina, were instead reporting retail sales in substantial amounts. *See* California State Board of Equalization's Motion to Dismiss or Convert Case filed in the R.J. Bankruptcy Case.

108.     As further evidence of the commingling, a single computer was used concurrently for all of the sale and financial transactions of DTC Entities, Braden and MBNB all of which benefitted Randy and Melina.

109.     A non-R.J. store, DTC Glendale, was operated on premises leased by R.J.

110.     When asked whether there were any transfers between Romano's Jewelers Services and R.J., Randy testified that "[a]s far as I know, they were both the same. So there wouldn't be anything to transfer."

111.     Plaintiff is informed and believes and based thereupon alleges that DTC Main Place was an entity closely related to R.J., which commingled its books and records, as well as financial information, with those of R.J.   Plaintiff believes that DTC Main Place may have acquired merchandise and/or assets from R.J. post-petition without a court order. Plaintiff

further believes that DTC Main Place possesses and/or controls financial records and other documents related to the business. dealings of the various entities (which were mere instrumentalities of Randy and Melina with no separate existence of their own).

112. Furthermore, Plaintiff believes that Randy and/or Melina, sometime after confirmation of the Plan, transferred ownership of the "Lakewood" and "Glendale" stores to DTC Lakewood and DTC Glendale, respectively and that the R.J. bankruptcy estate received no benefit from this transfer, but Randy and Melina did receive a benefit.

113. Plaintiff is informed and believes that the inventories from two of the R.J. stores were transferred to other identified jewelry stores controlled or owned by Randy and/or Melina, and that new inventory was purportedly and actually purchased and paid for the new stores all to Randy and Melina's benefit.

114. The inventory records were so poorly kept, identification of assets or jewelry in any particular store was impossible to determine all to the benefit of Randy and Melina.

115. Randy authorized and/or permitted checks payable to "cash," in the collective and approximate amount of $2,134,338.61, between 2011 and August 2014 (the "2011-2014 Cash Transactions").

116. Randy authorized and/or permitted at least forty-six (46) checks made payable to "cash" in amounts of just under $10,000, in the collective and approximate amount of $399,249, in July and August 2014 (the "July-August 2014 Cash Checks"). Plaintiff is informed and believes and thereupon alleges that these checks were all cashed at the same Wells Fargo Bank branch. Plaintiff is informed and believes that R.J. did not maintain accounts at Wells Fargo Bank at this time period.

117. Despite repeated requests to do so, Randy and Melina have failed to produce any documentation or records to show what happened to this money.

118. Plaintiff is informed and believes and based thereupon alleges that Randy and Melina took, received, and used for their personal benefit the amounts identified in the 2011-2014 Cash Transactions and the July-August 2014 Cash Checks.

119. Randy failed to maintain proper and accurate accounting books and records for R.J.'s operations and transactions.

2891064_2

120.     Randy failed to ever reconcile R.J.'s accounts and bank records and they do not depict accurate information of R.J.'s inventory, deposits, payments, and transfers.

121.     Plaintiff is informed and believes that R.J.'s inventory reports do not accurately reflect the actual inventory in R.J.'s possession at the time of operation and/or conversion from Chapter 11 to Chapter 7 of the BankruptcyCode.

122.     Randy failed to maintain accurate books and records of R.J.'s operations, failed to properly reconcile R.J.'s financial and banking transactions and failed to have accurate inventory reports.

123.     Plaintiff is informed and believes and based thereupon alleges that Randy continued to allow factoring by MBNB past the MBNB March 2010 Order without bankruptcy court approval.

124.     Randy continued to allow R.J. to purchase jewelry from Branden past the Branden March 2010 Order without bankruptcy court approval.

125.     The Trustee is informed and believes and thereupon alleges that Randy authorized agreements between R.J. and companies such as Branden.  In doing so, Randy unilaterally set prices that R.J. was compelled to pay to Branden, from which he ultimately benefitted.

126.     When R.J.'s leasehold interest of the Glendale location closed and was reopened by DTC Glendale in October 2014, R.J. was not compensated by DTC Glendale to the benefit of Randy and Melina.

127.     Despite the September 29, 2010, expiration of the MBNB March 2010 Order, financial transactions and factoring continued to take place between MBNB and R.J. from at least September 2010 through July 2015.  These were unauthorized post-petition transfers in direct violation of Section 549 of the Bankruptcy Code.  These transfers were made when Randy was an officer and director of MBNB.

128.     The Branden March 2010 Order authorized R.J. to purchase jewelry from Branden through andincluding September 29, 2010.  The Branden March 2010 Order was not extended.

129.     Despite the expiration of the Branden March 2010 Order, RJ continued to purchase jewelry from Branden for the period September 30, 2010, to July 11, 2015.   As a result, any markup

16

2891064_2

that Branden charged and received from the selling of jewelry to R.J. during the period of September 30, 2010, through July 11, 2015, constitutes avoidable post-petition transfers under Section 549 of the Bankruptcy Code. The transfers were made when Randy was an officer and sole director of Branden.

130.    From October 2010 through July 2015, there were disbursements from numerous bank accounts of R.J. to entities with the name Branden totaling approximately $11,668,276.56.

131.    Of that total amount disbursed to Branden from October 2010 through July 2015: (i) $1,690,150.83 was disbursed from R.J.'s unspecified account; (ii) $7,514,476.52 was disbursed from R.J.'s general account; (iii) $258,420.91 was disbursed from R.J.'s payroll account; and (iv) $496,816.73 was disbursed from R.J.'s tax account.

132.    In addition, Randy caused the following disbursements from R.J.'s accounts during the period from October 2010 through July 2015 : (i) $219,136.75 was disbursed from the account at Banco Popular; (ii) $904,784.06 was disbursed from the account at Bank of the West; (iii) $4,621.41 was disbursed from the account at Open Bank; (iv) $91,595.95 was disbursed from the account at Pacific Western Bank; (v) $406,574.37 was disbursed from the account at State Bank of India; and (vi) $81,699.03 was disbursed from the account at UnionBank.

133.    To date, neither Randy nor Melina have provided any business reason or justification for these transfers, and Plaintiff is informed and believes and based thereupon alleges Randy and/or Melina personally benefitted from these transfers.

## SECOND CLAIM FOR RELIEF

### (MONEY OR PROPERTY OBTAINED BY FALSE PRETENSES,

### A FALSE REPRESENTATION OR ACTUAL FRAUD)
### [11 U.S.C. § 523(a)(2)(A)]

134.    Plaintiff hereby refers to Paragraphs 1 through 133 of this Complaint and by this reference incorporates said Paragraphs herein as though fully set forth.

135.    Bankruptcy Code § 523(a)(2)(A) provides a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt for money or property… to the extent obtained by false pretenses, false representations or actual fraud.

2891064_2

136. All or part of the debt owed to Plaintiff is non-dischargeable as it is for money or property obtained by false pretenses, false representations, or actual fraud.

137. The Plan provides that "New Value Contribution" means a contribution on the effective date by, or on behalf of, Randy, in the amount of not less than $200,000.

138. The effective date in the Plan was May 11, 2013.

139. Randy failed and refused and thereafter continued to fail and refuse to make the New Value Contribution and has failed and refused and continued to fail and refuse to provide any evidence that the New Value Contribution was made.

140. The Plaintiff requested that Randy produce the evidence regarding any payment made by Randy pursuant to the terms of the Plan. Randy has failed to produce any such evidence.

### THIRD CLAIM FOR RELIEF

### (WILLFUL AND MALICIOUS INJURY)

### [11 U.S.C. § 523(a)(6)]

141. Plaintiff hereby refers to Paragraphs 1 through 140 of this Complaint and by this reference incorporates said Paragraphs herein as though fully set forth.

142. Bankruptcy Code § 523(a)(6) provides a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor for willful and malicious injury by the debtor to another entity or to the property of another entity.

143. The acts and conduct of Randy and Melina, as set forth above, constitutes willful and malicious injury and have harmed Plaintiff.

### FOURTH CLAIM FOR RELIEF

### (DENIAL OF DISCHARGE)

### [11 U.S.C. § 727(a)(3)]

144. Plaintiff hereby refers to Paragraphs 1 through 143 of this Complaint and by this reference incorporates said Paragraphs herein as though fully set forth.

145. Bankruptcy Code § 727(a)(3) provides that the court shall grant the debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

2891064_2

1  preserve any recorded information…from which debtor's financial condition might be
2  ascertained….

3    146. Plaintiff is informed and believes that Randy and Melina have concealed, destroyed,
4  mutilated, falsified, or failed to keep recorded information concerning their financial affairs and
5  transactions in that they failed and refused to produce documents concerning their financial
6  condition as ordered by the bankruptcy court on June 6, 2022, July 28, 2022, and November 7, 2022.

7    147. The discharge of Randy and Melina should be denied under Bankruptcy Code §
8  727(a)(3).

9  **FIFTH CLAIM FOR RELIEF**

10  **[11 U.S.C. § 727(a)(7)]**

11    148. Plaintiff hereby refers to Paragraphs 1 through 147 of this Complaint and by this
12  reference incorporates said Paragraphs herein as though fully set forth.

13    149. Bankruptcy Code §727(a)(7) provides that the court shall grant the debtor a
14  discharge, unless the debtor has committed any act specified in paragraph (2), (3), (4), (5) or (6) of
15  this subsection, on or within one year before the filing of the petition, or during the case, in
16  connection with another case, under this title…concerning an insider.

17    150. Bankruptcy Code § 727(a)(3) provides that the court shall grant the debtor a
18  discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
19  preserve any recorded information…from which debtor's financial condition might be
20  ascertained….

21    151. Bankruptcy Code § 727(a)(6) provides that the court shall grant the debtor a
22  discharge, unless the debtor has refused, in the case to obey any lawful order of the court, other than
23  an order to respond to a material question or to testify.

24    152. Plaintiff is informed and believes that Randy and Melina have concealed, destroyed,
25  mutilated, falsified, or failed to keep recorded information concerning their financial affairs and
26  transactions and R.J.'s financial affairs and transactions in that they failed and refused to produce
27  documents concerning their financial condition as ordered by the bankruptcy court on June 6, 2022,
28  July 28, 2022, and November 7, 2022, in connection with the R.J. Bankruptcy Case.

19

2891064_2

153.    R.J. is an insider of the Debtors as that term is defined in Bankruptcy Code § 101(31)(A)(iv).

154.    The discharge of Randy and Melina should be denied under Bankruptcy Code § 727(a)(7).

**SIXTH CLAIM FOR RELIEF**

**DENIAL OF DISCHARGE**

**[11 U.S.C. § 727(a)(6)]**

155.    Plaintiff hereby refers to Paragraphs 1 through 154 of this Complaint and by this reference incorporates said Paragraphs herein as though fully set forth.

156.    Bankruptcy Code § 727(a)(6) provides that the court shall grant the debtor a discharge, unless the debtor has refused, in the case to obey any lawful order of the court, other than an order to respond to a material question or to testify.

157.    On June 6, 2022, July 28, 2022, and November 7, 2022, Randy and Melina were order to appear and give testimony and information in aid of the R.J. Judgment against them.

158.    Randy and Melina have refused to obey the court orders entered June 6, 2022, July 28, 2022, and November 7, 2022.

159.    The discharge of Randy and Melina should be denied under Bankruptcy Code § 727(a)(6).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    On the first claim for relief, for a determination that the debt owed by Defendants to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(4);

2.    On the second claim for relief, for a determination that the debt owed by Defendants to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

3.    On the third claim for relief, for a determination that the debt owed by Defendants to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(6);

20

4.       On the fourth claim for relief that Defendants are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3);

5.       On the fifth claim for relief, for a determination that Defendants are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(7);

6.       On the sixth claim for relief, for a determination that the Defendants are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(6);

7.       For such other and further relief as the Court deems just and proper under the circumstances.

DATED:   April 28, 2023           BRUTZKUS GUBNER

                               By: /s/ David Seror
                                 DAVID SEROR
                                 JESSICA S. WELLINGTON
                                 Attorneys for Plaintiff, David Seror